1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

VICTOR SELF, an individual,

             Plaintiff,

    vs.

EQUINOX HOLDINGS, INC., a
Delaware Corporation; SOULCYCLE
HOLDINGS, LLC, a Delaware
Corporation; SOULCYCLE
PASADENA, LLC, a California
Corporation,

             Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO. CV 14-04241 MMM (AJWx)

ORDER CONDITIONALLY GRANTING
PLAINTIFF'S MOTION TO DISMISS

      On May 2, 2014, Victor Self filed this action against Equinox Holdings, Inc. ("Equinox"),
Soulcycle Holdings, LLC ("SCH"), Soulcycle Pasadena, LLC ("SCP"), and several fictitious
defendants (collectively, "defendants") in Los Angeles Superior Court.[1] One month later, on June
2, 2014, defendants timely removed the action, invoking the court's diversity jurisdiction under
28 U.S.C. § 1332.[2]

---

    [1]Notice of Removal from Los Angeles Superior Court ("Removal"), Docket No. 1 (June
2, 2014), Declaration of Damien P. DeLaney in Support of Notice of Removal ("DeLaney
Decl."), Exh. A ("Complaint") at 1.

    [2]Removal at 1.

On June 4, 2014, the court issued an order setting the scheduling conference for July 21, 2014.[3]  At the scheduling conference, the court set an August 18, 2014 deadline for the filing of motions or stipulations seeking the amendment of the pleadings to add new parties, new claims or new defenses.[4]  Self filed a request for voluntary dismissal of the case under Rule 41 of the Federal Rules of Civil Procedure on October 23, 2014.[5]  The court denied the request on October 28, 2014, noting that defendants had filed an answer to Self's complaint.[6]  Self then filed a motion to dismiss,[7] which defendants oppose.[8]

Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the court finds this matter appropriate for decision without oral argument.  The hearing calendared for January 8, 2015, is therefore vacated, and the matter is taken off calendar.

## I.  FACTUAL BACKGROUND

In 2004, Self joined an Equinox club in New York as a gym member.[9]  Beginning in 2009, he began working as a spin instructor at Equinox.[10]  While so employed, he purportedly generated

---

[3]Order Setting Scheduling Conference, Docket No. 11 (June 4, 2014).

[4]Minutes of Scheduling Conference, Docket No. 17 (July 21, 2014).

[5]Request to Dismiss Case, Docket No. 19 (Oct. 23, 2014).

[6]Order Denying Request to Dismiss Under Rule 41, Docket No. 20 (Oct. 28, 2014).

[7]Notice of Motion and Motion to Dismiss Case ("Motion"), Docket No. 21 (Nov. 17, 2014).  Self's motion to dismiss was originally set for hearing on March 9, 2015.  (See Motion at 1.)  On December 18, 2014, the court advanced the hearing on Self's motion to January 8, 2015.  (See Text Only Entry: (In Chambers) Advancing Hearing on Motion to Dismiss, Docket No. 23 (Dec. 18, 2014).)

[8]Opposition to Motion to Dismiss Case ("Opposition"), Docket No. 24 (Dec. 29, 2014). Self filed a reply to defendants' opposition on December 31, 2014.  (See Reply in Support of Plaintiff's Motion for Dismissal ("Reply"), Docket No. 25 (Dec. 31, 2014).)

[9]Complaint, ¶ 12.

[10]*Id.*

a large following among Equinox members at New York clubs in Scarsdale, Mamaroneck, and Manhattan, and clubs in Darien and Greenwich, Connecticut.[11]   While he was employed at Equinox in New York, Self also briefly taught spin classes at The Gym in Armonk; however, he terminated his employment at The Gym when Equinox requested that he do so.[12]

In 2011, Self and his family moved to Los Angeles, California.[13]   Once he arrived in Los Angeles, Self requested that he be placed on Equinox's spin class schedule at its Los Angeles clubs.[14]   He alleges that he eventually gained a large following of students who took his spin classes at clubs in West Hollywood, Santa Monica, Beverly Hills, Westwood, and Downtown Los Angeles.[15]   Despite the fact that Self taught classes at unpopular times, his classes were purportedly filled to maximum capacity.   Self asserts that the musical soundtracks he compiled contributed to the success and popularity of his classes.[16]

On January 6, 2012, Lauren Bruker, an instructor and the West Coast Coordinator at SoulCycle allegedly emailed Self to recruit him as a spin instructor for SoulCycle.[17]   Self asserts that he was not interested in Bruker's proposal at that time and only began to contemplate leaving Equinox to teach spin classes at other clubs in the beginning of 2013,[18] because he was not satisfied working at Equinox.[19]   He purportedly visited other spin studios in Los Angeles and, after

---

[11]*Id.*

[12]*Id.*, ¶ 13.

[13]*Id.*, ¶ 14.

[14]*Id.*

[15]*Id.*

[16]*Id.*, ¶ 15.

[17]*Id.*, ¶ 16.

[18]*Id.*

[19]*Id.*, ¶ 17.

visiting SoulCycle, decided that he wished to teach there.[20]  On May 11, 2013, Self emailed Julie Rice, the co-Founder and co-CEO of SoulCycle, about teaching at SoulCycle.[21]  Rice allegedly told Self that she would not hire current Equinox employees; she did not, however, mention any non-competition agreement that prevented her from hiring former Equinox employees after they left Equinox's employ.[22]

On June 5, 2013, Self submitted a letter of resignation to Equinox, allegedly relying on Rice's representation that he would be eligible for employment at SoulCycle when he was no longer employed at Equinox.[23]  Self asserts that, after submitting the letter of resignation, Keith Irace, Equinox's regional general manager, contacted him, as did several other Equinox managers. All asked that Self reconsider his decision to resign.[24]  On June 10, 2013, in a conversation with Irace, Self allegedly confirmed his decision to resign from Equinox, but agreed to stay and teach spin classes until suitable replacement instructors could be found.[25]  Although he was no longer an Equinox instructor, Self allegedly continued to attend the West Hollywood club daily as a member.  He asserts he remained an advocate for Equinox and its group fitness program.[26]

The day after confirming his intent to resign from Equinox, Self purportedly contacted Rice.  He informed her that he had resigned from Equinox and that he was interested in applying to be an instructor at SoulCycle.[27]  Rice purportedly replied on June 26, 2013, stating that, due

---

[20]*Id.*

[21]*Id.*, ¶ 18.

[22]*Id.*

[23]*Id.*, ¶ 19.

[24]*Id.*, ¶ 20.

[25]*Id.*, ¶ 21.

[26]*Id.*

[27]*Id.*, ¶ 22.

to a non-competition agreement with Equinox, SoulCycle could not hire him at that time.[28]  Self asserts that he taught his last class at Equinox on July 7, 2013, and contacted Rice by email again on July 12 regarding employment opportunities at SoulCycle.[29]   On July 31, 2013, Self purportedly received a reply to his July 12 email, stating him that, due to the non-competition agreement, SoulCycle could not hire him so soon.[30]  Irace purportedly emailed Self on August 2, 2013, requesting a meeting.[31]  When Self asked the purpose of the meeting, Irace allegedly responded that he did not wish to speak about it via telephone or email; Self asserts that Irace never followed up to schedule the meeting.[32]

On October 28, 2013, Bruker purportedly informed Self that he had been cleared to audition for a teaching position with SoulCycle; Self contends this demonstrates that the non-competition agreement between Equinox and SoulCycle no longer prevented him from working as an instructor at SoulCycle.[33]  Following his November 13, 2013, audition, Self was purportedly informed that he would have a telephone interview on December 4, 2013.  He was also invited to attend SoulCycle's Instructor Training Program in New York City in January 2014.[34]   On December 4, 2013, Self met with Bruker; at the meeting, Bruker and Self allegedly reviewed SoulCycle's Instructor Training Program and an agreement to work at SoulCycle's facility in Pasadena, California.[35]  Self asserts that he agreed to the training program and the terms of employment contract and received an official notification of his selection to participate in the

---

[28]*Id.*

[29]*Id.*, ¶¶ 23-24.

[30]*Id.*, ¶ 24.

[31]*Id.*, ¶ 25.

[32]*Id.*

[33]*Id.*, ¶ 26.

[34]*Id.*

[35]*Id.*, ¶ 27.

training program approximately one week later.[36]  The notification purportedly stated that the four-week Instructor Training Program would begin on January 14, 2014.[37]  Self alleges that, based on this notification and in preparation for the training program, he and his husband purchased five airline tickets for themselves, their two daughters, and their nanny, put down a $11,010 deposit for an apartment in New York City, and placed a $1,200 non-refundable deposit to rent space for their daughter's birthday party.[38]

Self asserts that, throughout December 2013, SoulCycle instructors told participants in to their classes that Self had been accepted into the instructor training program and would be joining SoulCycle after training in January 2014.[39]  On December 23, 2013, Bruker and Kaili Stevens of SoulCycle contacted Self, and rescinded his offer to attend the training session.[40]  Both Bruker and Stevens purportedly stated that he could not become an instructor at SoulCycle due to Equinox.[41]  Specifically, they said that Equinox had made disparaging remarks about Self and the manner in which he terminated his employment at Equinox, and that it had provided specific examples of comments he had allegedly made while employed at Equinox.[42]  The same day, Self allegedly contacted Carol Espel, the Senior Global Director of Group Fitness and Pilates at Equinox, regarding Equinox's purported comments.[43]  Espel allegedly told Self that Equinox's and SoulCycle's corporate policy prohibited each company from hiring instructors who had previously

---

[36]*Id.*

[37]*Id.*, ¶¶ 27-28.

[38]*Id.*, ¶ 28.

[39]*Id.*, ¶ 29.

[40]*Id.*, ¶ 30.

[41]*Id.*

[42]*Id.*

[43]*Id.*, ¶ 31.

been employed by the other company.[44]  Self alleges that, notwithstanding this purported policy, he and his husband know of multiple spin instructors who have been employed at both Equinox and SoulCycle.[45]  Self also alleges that many Equinox members told both him and his husband that Equinox told spin class students that Self had retired and was no longer teaching.[46]

On January 14, 2014, Self allegedly spoke to Melissa Shoffer, the Director of Legal Affairs at SoulCycle, who explained that Self's offer to attend the Instructor Training Program had been rescinded based on information SoulCycle received from Equinox regarding his departure.[47]  On January 16, 2014, Shoffer purportedly sent the following email to Self detailing the reasons for SoulCycle's decision:

> "SoulCycle made the decision to withdraw your invitation to participate in our training program because of concerns over your departure from Equinox, and that we weren't going to reconsider.  Since those concerns are the product of our internal deliberations and are subjective in nature, I did not offer more detail."[48]

Based on these facts, Self alleges, on information and belief, that Equinox made disparaging remarks to SoulCycle that it knew were false for the express purpose of preventing him from receiving an offer of employment at SoulCycle.[49]  His state court complaint pleads eight causes of action against defendants: (1) intentional interference with prospective economic

---

[44]*Id.*

[45]*Id.*, ¶ 33.

[46]*Id.*, ¶ 32.

[47]*Id.*, ¶ 34.

[48]*Id.*

[49]*Id.*, ¶ 35.

relations;[50] (2) defamation;[51] (3) fraudulent inducement;[52] (4) breach of the implied covenant of good faith and fair dealing;[53] (5) breach of oral contract;[54] (6) intentional interference with contract;[55] (7) promissory estoppel;[56] and (8) promissory fraud.[57]

## II.  DISCUSSION

### A.    Legal Standard Governing Voluntary Dismissal

Rule 41 of the Federal Rules of Civil Procedure governs the voluntary dismissal of claims. FED.R.CIV.PROC. 41.  It provides, in pertinent part: "Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper."  FED.R.CIV.PROC. 41(a)(2).[58]  A Rule 41(a)(2) motion is addressed to the sound discretion of the district court.  See *Hamilton v. Firestone Tire & Rubber Co., Inc.*, 679 F.2d 143, 145 (9th Cir. 1982); *Sams v. Beech Aircraft Corp.*, 625 F.2d 273, 277 (9th Cir. 1980). "The purpose of the rule is to permit a plaintiff to dismiss an action without prejudice so long as the defendant will not be prejudiced or unfairly affected by dismissal." *Stevedoring Services of*

---

[50]*Id.*, ¶¶ 36-43.

[51]*Id.*, ¶¶ 44-54.

[52]*Id.*, ¶¶ 55-67.

[53]*Id.*, ¶¶ 68-75.

[54]*Id.*, ¶¶ 76-81.

[55]*Id.*, ¶¶ 82-89.

[56]*Id.*, ¶¶ 90-95.

[57]*Id.*, ¶¶ 96-104.

[58]Rule 41(a)(1) permits dismissal without a court order where a notice of dismissal is filed "before the opposing party serves either an answer or a motion for summary judgment; or [files] a stipulation of dismissal signed by all parties who have appeared."  FED.R.CIV.PROC. 41(a)(1). Because defendants have filed an answer (Declaration of Damien P. DeLaney, Docket No. 1-2 (June 2, 2014), Exh. B (Answer)), and defendants did not stipulate to dismissal of the action, Rule 41(a)(1) does not apply.

1   *America v. Armilla Int'l B.V.*, 889 F.2d 919, 921 (9th Cir. 1989) (citation omitted); *Hamilton*,

2   679 F.2d at 145 ("In ruling on a motion for voluntary dismissal, the District Court must consider

3   whether the defendant will suffer some plain legal prejudice as a result of the dismissal.  Plain

4   legal prejudice, however, does not simply when defendant faces the prospect of a second lawsuit

5   or when plaintiff merely gains some tactical advantage" (citations omitted)).

6   **B.    Whether the Court Should Treat Plaintiff's Motion to Dismiss as a Motion for**

7   **Leave to Amend and to Modify the Case Management Schedule**

8          As an initial matter, the court must address defendants' contention that the court must treat

9   Self's motion as a motion for leave to amend the complaint, rather than as a motion for voluntary

10  dismissal of the action.[59]  Defendants argue that Self's motion to dismiss is effectively a motion

11  for leave to amend the complaint.[60]  They note that Self seeks dismissal of the action so that he

12  can proceed in Los Angeles Superior Court against the defendants named in this action and an

13  additional individual defendant, Jack Gannon, on the same claims alleged in this action; they note

14  that he seeks to do so despite the fact that he did not file a motion for leave to amend his complaint

15  in this court.[61]  Defendants appear to assume that Self's tactical decision was motivated by a desire

16  to avoid an unfavorable ruling on a motion to amend his complaint in this court.[62]  They thus

17

18          [59]Opposition at 4-7.

19
20          [60]*Id.*

21          [61]*Id.* at1-2.

22          [62]*Id.* at 1 ("Self's current course is designed to defy this Court's orders and unnecessarily
23  ratchet up the costs of this litigation.  Indeed, Plaintiff openly admits that he failed to amend by
    this Court's deadline, that he would lose a motion to amend if he brought it before this Court, and
24  that this is the reason that he has chosen to re-file and move to dismiss").  Despite defendants'
    repeated assertions that Self has admitted that he would have lost a motion to amend in this court
25  (see *id.* at 1 ("Indeed, Plaintiff openly admits . . . that he would lose a motion if he brought it
    before this Court"); *id.* at 7 ("Self is well aware that he could not meet the[ ] standards [to amend
26  his complaint to add Gannon as a party]; otherwise, he would have simply asked this Court for
27  leave to amend"), defendants adduce no evidence of such admissions, and the court's review of
    the record does not reveal any.  Rather, defendants appear to speculate concerning Self's reasons
28  for filing a new action in Los Angeles Superior Court naming Gannon as a defendant rather than

contend that "it is appropriate to evaluate th[e] motion as if Self were seeking leave to amend" because "the very purpose of th[e] [m]otion is to avoid the Court's authority to decide whether to permit him to amend his complaint to add Gannon."[63]

The court cannot agree.  As defendants recognize in their opposition, Self's motion seeks an order allowing him to dismiss the case voluntarily under Rule 41(a)(2) of the Federal Rules of Civil Procedure; it is quite clearly not a motion for leave to amend under Rule 16.[64]  Defendants cite no authority for the proposition that a court, ruling on a Rule 41(a)(2) motion to dismiss, must import Rule 16's legal standard governing amendment of pleadings, when the reason the plaintiff seeks to dismiss is to add another defendant in as different forum.  Although defendants are correct that Self could have moved to amend the complaint to add a defamation claim against Gannon, he was not required to do so, and he did not.  The court declines to transform Self's motion to dismiss into a motion for leave to amend based on defendants' assertions that Self *should have* first sought leave to amend his complaint in federal court.[65]

### C.    Whether the Court Should Grant Plaintiff's Motion

Having declined to treat Self's motion for voluntary dismissal as a motion for modification of the case management schedule and leave to amend, the court turns to the merits of the motion.

---

seeking leave to modify the scheduling order and amend his complaint here.

[63]*Id.* at 4.

[64]*Id.*

[65]While the court declines to treat Self's motion as a motion to amend, it believes defendants' arguments are relevant in determining whether dismissal is warranted.  Defendants' arguments regarding amendment of the complaint under Rule 16 emphasize, *inter alia*, that Self was allegedly dilatory in seeking to add Gannon as a party and that he lacks a good faith basis for amending the complaint, i.e., that he seeks to add Gannon as a party solely to destroy diversity and the basis for diversity jurisdiction.  (*Id.* at 4, 7.)  While each consideration may be relevant in determining whether to grant leave to amend, as defendants assert (see *id.*), they also are relevant in deciding whether to permit dismissal under Rule 41(a)(2).  As the court discusses *infra*, Self's delay or lack of diligence in seeking to dismiss his claims, the adequacy of the his explanation for the dismissal, and the lack of a federal forum for defendants are all relevant considerations in determining whether to allow a plaintiff voluntarily to dismiss his action.

"When confronted with a motion for voluntary dismissal pursuant to Rule 41(a)(2), the [c]ourt must determine: (1) whether to allow dismissal; (2) whether the dismissal should be with or without prejudice; and (3) what terms and conditions, if any, should be imposed." *Fraley v. Facebook, Inc.*, No. 11-CV-01726-LHK, 2012 WL 893152, *2 (N.D. Cal. Mar. 13, 2012) (citing *Williams v. Peralta Community College Dist.*, 227 F.R.D. 538, 539 (N.D. Cal. 2005)); 16-G W. Schwarzer, A. Tashima, & J. Wagstaffe, RUTTER GROUP PRACTICE GUIDE: FEDERAL CIVIL PROCEDURE BEFORE TRIAL (Calif. & 9th Cir. eds.) § 16:343.  The court considers these factors in turn.

### 1.    Whether the Court Should Allow Dismissal

A Rule 41(a)(2) motion for voluntary dismissal should be granted "unless a defendant can show that it will suffer some plain legal prejudice asa result." *Smith v. Lenches*, 263 F.3d 972, 975 (9th Cir. 2001).  "[L]egal prejudice means prejudice to some legal interest, some legal claim, some legal argument." *Id.* at 976.  "[I]n determining what will amount to legal prejudice, courts have examined whether a dismissal without prejudice would result in the loss of a federal forum, or the right to a jury trial, or a statute-of-limitations defense." *Id.*  "Other factors commonly considered include the defendant's effort and expense involved in preparing for trial, excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action, insufficient explanation of the need to take a dismissal, and the fact that summary judgment has been filed by the defendant." *Moore v. Goodyear Tire & Rubber Co.*, No. CV-11-01174-PHX-NVW, 2011 WL 3684508, *3 (D. Ariz. Aug. 23, 2011) (citing *United States v. Berg*, 190 F.R.D. 539, 543 (E.D. Cal. 1999)).

Self argues that dismissal under Rule 41(a)(2) is appropriate because he filed "a new case in state court alleging the very same causes of action with an added defamation count against Jack Gannon," and it would be "nonsensical to proceed with two separate litigations."[66]  He contends that defendants will suffer no prejudice if this action is dismissed because "they have known of [his] specific intentions to amend his pleading and add Jack Gannon as an individual defendant for

---

[66]Motion at 7.

11

months," yet refused to stipulate to extend the deadline for the amendment of pleadings or to the addition of Gannon as a party.[67]  Defendants counter that "Self's effort to dismiss his claims is nothing more than an attempt to forum shop" to gain a tactical advantage so that he can have his claims heard in state court.[68]  They assert that Self failed to move in a timely fashion to amend his complaint to add Gannon, despite the fact that he knew of Gannon's communications with SoulCycle, and faced with a likely adverse ruling if he sought leave to amend the complaint, now seeks to have this action dismissed.[69]  Defendants assert that Self's "improper litigation conduct has caused real prejudice" because they will be "deprived of [the] federal forum to which they are entitled [as a result of] diversity jurisdiction," and "will be forced to start from scratch with th[e] litigation after carrying on in this court for five months."[70]

As noted, to defeat a motion for voluntary dismissal under Rule 41(a)(2), defendants must show that they will suffer "plain legal prejudice" if the court dismisses the action.  *Smith*, 263 F.3d at 975.  "Plain legal prejudice does not result simply because a suit remains unresolved, the defendant faces the prospect of a second lawsuit, or the plaintiff stands to gain some tactical advantage."  *Mitchell-Jones v. Menzies Aviation, Inc.*, No. C10-1190 JLR, 2011 WL 3273221, *2 (W.D. Wash. July 28, 2011) (citing *Westlands Water Dist. v. United States*, 100 F.3d 94, 97 (9th Cir. 1996); *Hamilton*, 679 F.2d at 145).  Moreover, "neither the fact that a defendant has incurred substantial expense, nor the fact that the defendant has begun trial preparations establishes legal prejudice warranting the denial of a motion under Rule 41(a)(2)."  *Id.* (citing *Hamilton*, 679 F.2d at 145-46).

### a.   Loss of a Federal Forum/"Forum Shopping"

Defendants assert they will suffer legal prejudice because they will lose a federal forum if the court permits Self to dismiss this suit.  While loss of a federal forum is a factor to be

---

[67]*Id.*

[68]Opposition at 1, 4.

[69]*Id.* at 4-7.

[70]*Id.* at 2.

1    considered in determining legal prejudice, see *Westlands*, 100 F.3d at 97, the Ninth Circuit has

2    held that the prospect of trying state claims in state court as a result of a voluntary dismissal does

3    not constitute "legal prejudice," see *Smith*, 263 F.3d at 976 ("Plain legal prejudice does not result

4    merely because the defendant will be inconvenienced by having to defend in another forum or

5    where a plaintiff would gain a tactical advantage by that dismissal," citing *Hamilton*, 679 F.2d at

6    145); *id.* (finding "no fault" with the district court's conclusion that "while a change from federal

7    to state court might create a tactical disadvantage to EFI, that was not legal prejudice"); *id.* ("the

8    need to defend against state law claims in state court is not "plain legal prejudice" arising from

9    voluntary dismissal of the federal claims in the district court"); see also *Am. Nat'l Bank & Trust*

10   *Co. of Sapulpa v. Bic Corp.*, 931 F.2d 1411, 1412 (10th Cir. 1991) ("The possibility that

11   plaintiffs may gain a tactical advantage by refiling in state court is insufficient to deny a voluntary

12   motion to dismiss without prejudice especially when state law is involved," cited with approval

13   in *Westlands*, 100 F.3d at 97); *Baker v. Arkansas Blue Cross and Blue Shield*, No. CV 08-3974

14   SBA, 2010 WL 2228522, *2 (N.D. Cal. June 1, 2010) ("[T]he need to defend against state law

15   claims in state court is not 'plain legal prejudice' arising from voluntary dismissal" (citations

16   omitted)); *Haseko Homes, Inc. v. Underwriters Inc. Co.*, No. 09cv1613-L (AJB), 2010 WL

17   358531, *3 (S.D. Cal. Jan. 22, 2010) ("NAS argues that Plaintiffs are forum showing with a view

18   toward steering the insurance coverage litigation to California state court.  Relying solely on

19   *Westlands Water District v. United States*, NAS asserts without elaboration or explanation that it

20   will be prejudiced by the loss of the federal forum.  In *Westlands*, Defendants did not argue

21   prejudice based on the loss of the federal forum, and the court did not hold that the loss of the

22   federal forum constituted plain legal prejudice," citing *Westlands*, 100 F.3d at 96); *Tur v.*

23   *YouTube, Inc.*, No. CV 06-4436 FMC (AJWx), 2007 WL 4947615, *3 (C.D. Cal. Oct. 19, 2007)

24   ("While blatant forum shopping may be valid grounds to deny a Rule 41(a)(2) motion, 'plain legal

25   prejudice does not result merely because the defendant will be inconvenienced by having to defend

26   in another forum or where a plaintiff would gain a tactical advantage'" (citations omitted)); *Bader*

27   *v. Elec. for Imaging, Inc.*, 195 F.R.D. 659, 662 (N.D. Cal. 2000) ("[W]hile a change from

28

federal to state court might create a tactical disadvantage to defendants, that is not legal prejudice").

The crux of defendants' argument is that they will be prejudiced if the court grants Self's motion because Gannon's citizenship is not diverse, and they will thus be prevented from removing the state court action to federal court.[71]  Specifically, defendants contend that dismissal will "deprive[ ] [them] of a federal forum to which they are entitled through diversity jurisdiction."[72]  As an initial matter, defendants' argument presumes that any motion to amend by Self to add Gannon would have been denied.  The record is simply not adequate to permit this conclusion.

Even if defendants' presumption were correct, however, and granting Self's motion will permit him to prosecute his state law claims in state court without the possibility of removal, this "tactical advantage" and defendants' loss of a federal forum, standing alone, are a not sufficient basis upon which to deny the motion.  See *King v. O'Reilly Automotive Stores, Inc.*, No. C13-1220 JLR, 2013 WL 5675007, *2 (W.D. Wash. Oct. 17, 2013) ("O'Reilly asserts that the court should deny Mr. King's motion because it 'is motivated by forum shopping.'  O'Reilly notes that Mr. King's motion was filed just days after the court issued an unfavorable discovery ruling against Mr. King and that Mr. King admits that '[d]ismissal will enable [him] to refile his case in state court where it was filed originally.' . . . [A]lthough it is true that granting Mr. King's motion for voluntary dismissal may allow him to refile his action in state court in a form that would prevent removal to federal court, this prospect alone is insufficient to establish legal prejudice," citing *Smith*, 263 F.3d at 976 ("[T]he need to defend against state law claims in state court is not 'plain legal prejudice' arising from voluntary dismissal of the federal claims in the district court'); *Am. Nat'l Bank & Trust*, 931 F.2d at 1412 ("The possibility that plaintiffs may gain a tactical advantage by refiling in state court is insufficient to deny a voluntary motion to dismiss without

---

[71]Opposition at 1 ("Then, after litigating his case in this court for nearly five months, Self re-filed the case in the Los Angeles Superior Court with Gannon as an added defendant, and seeks to dismiss this case *so that he can avoid a federal court forum*" (emphasis added)).

[72]*Id.* at 2.

prejudice especially when state law is involved")); *Viriyapanthu v. Bank of America, N.A.*, No. SACV 12-1285-DOC (ANx), 2013 WL 3188848, *3 (C.D. Cal. June 21, 2013) ("BofA argues that it would suffer legal prejudice because it would 'lose [f]ederal jurisdiction as a result of Plaintiffs' blatant forum shopping.'  While it is true that 'in determining what will amount to legal prejudice, courts have examined whether a dismissal without prejudice would result in the loss of a federal forum,' the analysis is not as straightforward as BofA argues.  First, it is firmly established that legal prejudice 'does not result simply when defendant faces the prospect of a second lawsuit or when plaintiff merely gains some tactical advantage.'  Similarly, 'the threat of future litigation which causes uncertainty is *insufficient* to establish plain legal prejudice.'  In support of this rule, the court in *Westlands* cited *American National Bank & Trust Company of Sapulpa v. Bic Corporation*, which, in examining this issue, held that the 'possibility that plaintiffs may gain a tactical advantage by refiling in state court is insufficient to deny a voluntary motion to dismiss without prejudice,' and that 'there is no legal prejudice to defendant even if a trial is held in state court.'  Here, the Court finds that BofA has not shown that it would suffer legal prejudice if this case were to be dismissed without prejudice.  While BofA may face an ongoing state court lawsuit that could be slightly altered by the addition of new claims, such a prospect is even less prejudicial than the 'second lawsuit' contemplated by *Hamilton* and determined to be insufficient to establish legal prejudice.  See *Hamilton*, 679 F.2d at 143; see also *Westlands*, 100 F.3d at 96 (finding 'the threat of future litigation which causes uncertainty' similarly insufficient to establish plain legal prejudice); *Grivas v. Parmelee Transp. Co.*, 207 F.2d [334,] . . . 338 [(7th Cir. 1953)], cert. denied, 347 U.S. 913 (1954) (finding that 'without a showing that it has acquired some right or that it seeks or has become entitled to affirmative relief, the denial of which would work actual prejudice to it, no valid objection will lie' regarding subsequent litigation in state court).  BofA has not acquired any right or become entitled to any affirmative relief in this case; indeed, it has not even brought any motions for substantive relief before this Court").[73]

---

[73]See also *Moore*, 2011 WL 3684508 at *3-4 ("The 'loss of a federal forum' factor, by contrast, appears to strengthen Goodyear's argument, assuming Goodyear correctly surmises Plaintiffs' real intentions for seeking dismissal.  But case law elaborating on 'loss of a federal

1

2

forum' indicates that it has no real significance.  Indeed, according to the case cited by the Ninth Circuit as an example of 'loss of federal forum' analysis, 'The possibility that plaintiffs may gain a tactical advantage by refiling in state court is insufficient to deny a voluntary motion to dismiss without prejudice, especially when state law is involved. . . . Rule 41(a)(2) provides no guarantee of federal jurisdiction to protect a removed action.  Thus, it is not an abuse of discretion for the district court to dismiss an action without prejudice even where the plaintiff's only motive is to recommence the action in state court.'  Thus, even if Plaintiffs are secretly looking for a way back to state court because they perceive a 'tactical advantage' by avoiding *Daubert*, Goodyear still does not suffer legal prejudice," citing *Am. Nat'l Bank & Trust Co.*, 931 F.2d at 1412-13); *Mitchell-Jones*, 2011 WL 3273221 at *2 ("[W]hile the potential loss of a federal forum may be considered in determining legal prejudice, the Ninth Circuit has found that the prospect of trying state claims in state court as a result of a voluntary dismissal does not amount to 'legal prejudice.'  Thus, the court finds no legal prejudice to Menzies if Mr. Mitchell-Jones's state law employment and discrimination claims are litigated in state court"); *Malava, LLC v. Innovative Beverage Group Holdings, Inc.*, No. 09cv173 WQH (WVG), 2010 WL 4868024, *2 (S.D. Cal. Nov. 22, 2010) ("Plain legal prejudice is defined in the Ninth Circuit as 'prejudice to some legal interest, some legal claim, some legal argument.  'Plain legal prejudice, however, does not result simply when defendant faces the prospect of a second lawsuit or when plaintiff merely gains some tactical advantage.'  Although Defendants contend that they may face the prospect of future litigation and that Plaintiff may gain some tactical advantage, Defendants have failed to show that they will suffer plain legal prejudice as a result of the granting of Plaintiff's Motion to Voluntarily Dismiss the Case.  Plaintiff's Complaint is dismissed" (citations omitted)); *Haseko Homes, Inc.*, 2010 WL 358531 at *3 ("NAS argues that Plaintiffs are forum shopping with a view toward steering the insurance coverage litigation to California state court.  Relying solely on *Westlands Water District v. United States*, NAS asserts without elaboration or explanation that it will be prejudiced by the loss of the federal forum.  In *Westlands*, Defendants did not argue prejudice based on the loss of the federal forum, and the court did not hold that the loss of the federal forum constituted plain legal prejudice.  '[P]lain legal prejudice does not result merely because the defendant will be inconvenienced by having to defend in another forum or where a plaintiff would gain a tactical advantage by that dismissal.'  Accordingly, NAS's argument that it will be prejudiced by the loss of the federal forum is rejected"); *Wiesen v. AstraZeneca Pharmaceuticals, L.P.*, No. C 06-1629 JSW, 2006 WL 2529472, *2 (N.D. Cal. Aug. 31, 2006) ("The Ninth Circuit . . . has made clear that '[p]lain legal prejudice, however, does not result simply when defendant faces the prospect of a second lawsuit or when plaintiff merely gains some tactical advantage.'  Indeed, '[t]he possibility that plaintiffs may gain a tactical advantage by refiling in state court is insufficient to deny a voluntary motion to dismiss without prejudice, especially when state law is involved,' as it is in this case" (citations omitted)); *McCovey v. Astrazeneca Pharmaceuticals, L.P.*, No. C-06-0681 SC, 2006 WL 2329465, *1-2 (N.D. Cal. Aug. 9, 2006) ("In support of their argument that they would suffer plain legal prejudice if Plaintiff's motion is granted, Defendants argue that they would be prejudiced by the 'loss of a federal forum,' and that this prejudice would be 'compounded by plaintiff[']s . . . 'bad faith' forum-shopping tactics,' of which Defendants see this motion as an example.  Defendants spend most of their argument on this last point, which is odd

Moreover, although a motion for voluntary dismissal can be denied if plaintiff has engaged in "blatant forum shopping," see *Davis v. Bonanno*, No. CV 08-03449 ODW (AJWx), 2008 WL 4330296, *3 (C.D. Cal. Sept. 19, 2008) (citing *Kern Oil Refining Co. v. Tenneco Oil Co.*, 792 F.2d 1380, 1390 (9th Cir. 1986)); *Tur*, 2007 WL 4947615 at *3 (recognizing that "blatant forum shopping may be valid grounds to deny a Rule 41(a)(2) motion" and citing *Kern Oil*), defendants have not demonstrated that plaintiff has engaged in blatant forum shopping in this case.

In *Kern Oil*, the Ninth Circuit affirmed the district court's denial of plaintiff's motion for voluntary dismissal on the basis of forum shopping. *Kern Oil*, 792 F.2d at 1389-90. The district court concluded that plaintiff had engaged in "impermissible forum shopping" by attempting voluntarily to dismiss a counterclaim without prejudice to avoid having that claim resolved by the district court. *Id.* at 1389 ("The district court found that 'Tenneco's repeated requests to be allowed to dismiss Count IV without prejudice were made for the purpose of avoiding Judge Marshall and this Court and having the same claim heard by Judge Waters; thus, they constitute impermissible forum shopping"). The Ninth Circuit concluded that the district court did not err in denying the motion for voluntary dismissal, reasoning that the impermissible aspect of the plaintiff's forum shopping was its attempt to bar the litigation of issues raised by a counterclaim.

---

given this Court's rejection of similar arguments in the context of related litigation. As the Court stated in those cases, plain legal prejudice is not shown by demonstrating 'the prospect of a second lawsuit or when plaintiff merely gains some tactical advantage through the use of a procedural device.' Defendants' arguments about 'bad faith' and 'abuse of the judicial process' and 'forum-shopping' are all in this vein. In support of their argument that they would experience plain legal prejudice in the form of the loss of a federal forum, Defendants cite dicta from a Ninth Circuit Court of Appeals case and a distinguishable case from the Eastern District of California, and give no explanation why they would suffer from such a result or why this would constitute a detriment to their cause. The entire passage in *Westland Water Dist. v. United States* from which Defendants selectively quote reasons: "*For example*, in determining what will amount to legal prejudice, courts have examined whether a dismissal without prejudice would result in the loss of a federal forum, or the right to a jury trial, or a statute-of-limitations defense.' Especially in light of the holding of *Hamilton* discussed above, such dicta is not sufficient in-and-of-itself to establish the *per se* rule for which Defendants appear to argue. . . . Plaintiff's motion for voluntary dismissal of her action without prejudice is, therefore, granted" (citations omitted)).

See *id.* ("Tenneco asserts that its sole motivation in seeking a voluntary dismissal was to consolidate all of the 'supply' cases.  The flaw in Tenneco's argument is that Count IV was a compulsory counterclaim in the 'price' case before Judges Marshall and Real.  If Judge Marshall had dismissed Count IV without prejudice, the final judgment entered by Judge Real would have barred the litigation of the issues raised in Count IV.  Accordingly, Tenneco's justification for seeking a voluntary dismissal was baseless").

Here, it does not appear that Self's motivation for seeking voluntary dismissal is to prevent the litigation of the issues raised by his claims.  Rather, he appears to be motivated, at least in part, by a desire to consolidate related cases before a single court.[74]  Self moved to dismiss this action after he filed a parallel state court action naming Gannon as an individual defendant.  Self filed the state court action only after repeated, unsuccessful requests that defendants stipulate to extend the deadline for the amendment of pleadings and addition of parties, and agree to the filing of an amended complaint in this case.[75]  Given the posture of this litigation and Self's repeated attempts to secure a stipulation that would have permitted the addition of Gannon as a party and the addition of a defamation claim against him, Self's motivation for seeking dismissal, i.e., to have claims against all defendants heard before one court, is plausible.  Courts have recognized that a plaintiff's desire to dismiss an action so that related actions can be heard in a single forum does not constitute "impermissible forum shopping" and thus does not warrant denial of a motion for voluntary dismissal.  See, e.g., *Viriyapanthu*, 2013 WL 3188848 at *4 ("In *Kern Oil & Refining Company v. Tenneco Oil Company*, BofA's other citation, the Ninth Circuit affirmed a district court's denial of a motion for voluntary dismissal based, in part, on 'impermissible forum shopping.'  However, in that case, the court suggested that one *permissible* motivation for seeking a voluntary dismissal would be to consolidate related cases before a single court, while the

---

[74]See Motion at 8 ("There are currently two lawsuits with the exact same claims – one in state court that includes Jack Gannon as a party and a second in federal court that does not include Mr. Gannon as a party.  It is inefficient to have two separate actions on these same claims").

[75]See Motion at 4-6; see also Declaration of Janet Hong in Support of Plaintiff's Motion for Dismissal ("Hong Decl."), Docket No. 21-1 (Nov. 17, 2014), ¶¶ 3-15.

impermissible aspect of a plaintiff's 'forum shopping' involved attempting to bar the litigation of issues raised by a counterclaim.  Here, to the extent that Plaintiffs are involved in any forum shopping, they truly are attempting to consolidate all claims before a single judge.  Moreover, considering the relative resources available to Plaintiffs as compared to Defendant Bank of America, it is not unreasonable to conclude that a single action would be in the interests of justice.  For the foregoing reasons, the Court hereby GRANTS IN PART Plaintiffs' motion and DISMISSES the entire matter without prejudice"); *Baker*, 2010 WL 2228522 at *3 ("Defendants contend that the Court should reject Plaintiffs' request to dismiss their contract claim on grounds that they are engaging in forum shopping. A motion for dismissal under Rule 41(a)(2) may be denied where the party seeking dismissal is doing so to avoid having its claim heard by a particular judge or court.  At first blush, the timing of the instant request certainly is curious, given that it comes late in the proceedings and *after* Plaintiffs suffered adverse rulings on two critical motions.  At the same time, the Court notes that Plaintiffs have commenced a state court action in which they have now alleged derivative claims on behalf of Med-Vantage, as well as a direct claim for breach of contract.  As such, Plaintiffs have made a plausible showing that their desire to avoid duplicative proceedings by proceeding only in state court is, at least facially, a plausible one.  The Court will therefore permit Plaintiffs to dismiss their remaining contract claim against BPI"); *Tur*, 2007 WL 4947615 at *3 (concluding that plaintiff was not engaged in "blatant forum shopping" such that defendants would suffer legal prejudice where plaintiff sought dismissal to join a related class action and "facilitate the interests of the putative class, through the unification of discovery and other pre-trial matters").

### b.    Avoiding the Court's Authority to Grant Leave to Amend

As noted, defendants argue at length in their opposition that "the very purpose of th[e] [m]otion is to avoid the Court's authority to decide whether to permit [Self] leave to amend his complaint."[76]  Although they do not state so explicitly, defendants appear to argue that they will suffer legal prejudice if the court permits Self to dismiss this action because dismissal will allow

---

[76]Opposition at 4.

him to flout the court's procedural rules, i.e., the scheduling order and deadline for the amendment of pleadings, and avoid an "inevitable" adverse ruling on a motion for leave to amend.[77]  The court disagrees.

As an initial matter, the court disagrees with defendants' contention that it is "inevitable" that a motion for leave to amend would have been denied.  Defendants maintain that Self "could not have shown good cause if he tried" because "[e]ven though he [knew] in June that Gannon had communicated with SoulCycle, and even though his complaint alleges that such communications form the basis for his defamation claim, Self waited until October to try to bring Gannon into the case."[78]  Having never had such a motion presented to it, the court has not evaluated whether it would have granted or denied a motion for leave to amend the complaint.  The court notes, however, that defendants' assumption that Self would not have been able to show "good cause" for a modification of the scheduling order appears to be based on a mischaracterization of the factual background of this case.

Defendants argue that Self knew Gannon had made allegedly defamatory statements to SoulCycle as early as July 9, 2014, when they served their initial disclosures.[79]  The disclosures identified Gannon as an individual "expected to have knowledge of the circumstances of Mr. Self's departure from Equinox and discussions with SoulCycle regarding Mr. Self's application for employment there."[80]  Self counters that he had no basis for seeking amendment on the basis of an "ambiguous representation" that Gannon had "knowledge of the . . . discussions with

---

[77]*Id.* at 7 ("Self is well aware that he could not meet the[ ] standards [for leave to amend]; otherwise, he would have simply asked this Court for leave to amend.  To avoid the inevitable result, Self has instead fragmented the proceedings, creating disruption and delay along the way.  Choosing to dismiss one's claims and refile in another court out of fear of an adverse ruling is the very essence of forum shopping, which the courts have routinely and repeatedly disfavored").

[78]*Id.* at 4-5.

[79]*Id.* at 2; see Declaration of Damien P. DeLaney in Opposition to Plaintiff's Motion for Dismissal ("DeLaney Decl."), Docket No. 24-1 (Dec. 29, 2014), Exh. A ("Initial Disclosures").

[80]*Id.* at 2.

SoulCycle."[81]  He contends that, absent information concerning the actual discussions between Gannon and SoulCycle, he could not have known that Gannon was the individual who actually made the purportedly defamatory statements.[82]  The court agrees.  Although they put Self on notice that Gannon had information concerning the discussions between Equinox and SoulCycle regarding his employment application, defendants' initial disclosures did not, as defendants assert, reveal that Gannon was the individual who allegedly defamed Self.  In fact, the disclosures are equally susceptible of the interpretation that Gannon had knowledge of the discussions between Equinox and SoulCycle, but did not personally take part in them.  Far from knowing that Gannon made the allegedly defamatory statements to SoulCycle by July 9, it appears that Self knew, at most, that Gannon had relevant information about who had made the statements.

Defendants also appear to argue that Self could not have satisfied Rule 16's good cause standard because, *inter alia*, he indicated in the parties' Joint Rule 26(f) report prior to the July 21, 2014, scheduling conference that he "d[id] not anticipate the appearance of other parties at th[at] time"; he did not tell the court at the July 21 conference that he was contemplating an amendment to add an individual defamation claim against an individual party, and did not request additional time to take discovery; and he did not ask that defendants stipulate to amendment of the complaint until October 8, 2014, despite the fact that he received emails between Gannon and SoulCycle in a document production on September 8, 2014, and took the deposition of SoulCycle's Rule 30(b)(6) witness on September 30, 2014.[83]

These facts do not demonstrate that Self was dilatory in attempting to identify Gannon and add him as a defendant.  Although Self did not state in the Rule 26(f) report or at the scheduling conference that he was considering the addition of an individual defamation claim against an unknown party, he provides a plausible explanation for his failure to do so – i.e., having not

---

[81]Reply at 2.

[82]*Id.*

[83]Opposition at 3.

1  identified the Equinox employee or employees who spoke with SoulCycle, he had no basis for

2  doing so.[84]

3        Moreover, while the court might have questioned whether there was good cause for

4  amendment had Self waited until October 8, 2014, to request a stipulation from defendants

5  concerning the proposed amendment, defendants were on notice of Self's desire to add an

6  individual defamation claim long before that date, and indeed, before the August 18, 2014,

7  deadline for the amendment of pleadings.  On July 21, 2014, Self told defendants he intended to

8  file an individual defamation claim against the Equinox employee who made allegedly defamatory

9  statements concerning him to SoulCycle; he also served requests for production and deposition

10 notices, indicating that both were necessary so that he could identify the unknown employee.[85]

11 On July 30, 2014, Self contacted defendants to schedule depositions of Equinox's and SoulCycle's

12 persons most knowledgeable; he stated that the depositions would have to be noticed quickly given

13 the deadline for the amendment of pleadings.[86]  Because the depositions had not yet been

14 scheduled and documents he had requested had not yet been produced, Self asked defendants to

15 stipulate to an extension of the amendment deadline on August 6, 2014.[87]  Defendants refused to

16 do so.[88]  Thus, any suggestion that defendants were unaware of Self's desire to amend the

17 complaint to add an individual defamation claim until October 8, 2014, is belied by the facts.

18       On balance, it appears that Self was reasonably diligent in attempting to identify Gannon

19 as the Equinox employee who made allegedly defamatory statements prior to the amendment

20 deadline, in that he asked to schedule depositions and requested that documents be produced prior

---

[84]Reply at 1-3.

[85]Hong Decl., ¶¶ 4-6.

[86]*Id.*, ¶ 6.

[87]*Id.*, ¶ 7.

[88]*Id.*

to the deadline.[89]  Although he did not advise the court that he sought to add a new party prior to the August 18 deadline, Self appears to have had a good faith belief that he would be able to obtain a stipulation from defendants to amend the complaint; indeed, he approached defendants on four separate occasions concerning a stipulation.[90]  Thus, while in the context of this motion, the court need not definitively determine whether good cause would have existed to permit Self to amend to add Gannon as a defendant, the facts known to the court certainly do not compel the conclusion that Self lacked good cause to amend after the amendment deadline.[91]

---

[89]*Id.*, ¶¶ 4, 6-10.

[90]See *id.*, ¶¶ 7, 11-14.

[91]Defendants assert that even if Self could show good cause under Rule 16, it would have been improper to grant leave to amend under 28 U.S.C. § 1447(e), which governs the joinder of parties whose citizenship destroys diversity.  (Opposition at 5-7 ("[T]his Court has the authority to decline to permit amendments to the pleadings that would have the effect of destroying diversity jurisdiction").)  "[W]hen a plaintiff amends h[is] complaint after removal to add a diversity destroying defendant," courts have concluded that Rule 15 and Rule 16 do not govern the amendment.  *Greer v. Lockheed Martin*, No. CV 10-1704 JR (HRL), 2010 WL 3168408, *4 (N.D. Cal. Aug. 10, 2010) (quoting *Chan v. Bucephalus Alternative Energy Group, LLC*, No. C 08-04537, 2009 WL 1108711, *3 (N.D. Cal. Apr. 24, 2009) (internal quotation marks omitted)).  This type of amendment is instead scrutinized under 28 U.S.C. § 1447(e), which states that, "if after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court."  28 U.S.C. § 1447(e).  "The language of § 1447(e) is couched in permissive terms and it clearly gives the district court the discretion to deny joinder."  *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 691 (9th Cir. 1998).

When deciding whether to permit joinder under § 1447(e), a court should consider: "(1) whether the party sought to be joined [is] needed for just adjudication and would be joined under Federal Rule of Civil Procedure 19(a); (2) whether the statute of limitations would preclude an original action against the new defendant[ ] in state court; (3) whether there has been unexplained delay in requesting joinder; (4) whether joinder is intended solely to defeat federal jurisdiction; (5) whether the claims against the new defendant appear valid; and (6) whether denial of joinder will prejudice the plaintiff."  *McGrath v. Home Depot USA, Inc.*, 298 F.R.D. 601, 607 (S.D. Cal. 2014) (quoting *IBC Aviation Servs., Inc. v. Compania Mexicana de Aviacion, S.A. de C.V.*, 125 F.Supp.2d 1008, 1011 (N.D. Cal. 2000) (citing *Newcombe*, 157 F.3d at 691; *Palestini v. General Dynamics Corp.*, 193 F.R.D. 654, 658 (S.D. Cal. 2000))).  A court's decision under § 1447(e) is reviewed for abuse of discretion.  See *Newcombe*, 157 F.3d at 691.

Although defendants note correctly that the court could have denied any motion to add Gannon as a defendant, it appears unlikely that the court would have exercised its discretion in

this way.  As respects the first relevant factor, joining Gannon is necessary for just adjudication of the matter.  "Although courts consider whether a party would meet [the Rule 19] standard for a necessary party, amendment under § 1447(e) is a less restrictive standard for joinder than for joinder under [Rule19]," and "[t]he standard is met when failure to join will lead to separate and redundant actions."  *Boon v. Allstate Ins. Co.*, 229 F.Supp.2d 1016, 1022 (C.D. Cal. 2002) (citing *IBC Aviation Services*, 125 F.Supp.2d at 1011-12).  The standard is not met when the "defendant[ to be added is] only tangentially related to the cause of action or would not prevent complete relief."  *Id.*  Stated differently, given § 1447(e)'s permissive standard, "a court may still find that joinder is appropriate for the adjudication of the controversy if there is a high degree of involvement by the defendant in the occurrences that gave rise to the plaintiff's cause of action," even if the diversity-destroying defendant "would not [strictly] be [a] necessary [party] under Rule 19(a)."  *Perryman v. Life Time Fitness, Inc.*, No. CV-09-452-PHX-GMS, 2009 WL 5185177, *2-3 (D. Ariz. Dec. 22, 2009) (citing *Desert Empire Bank v. Ins. Co. of N. America*, 623 F.2d 1371, 1373-74, 1376 (9th Cir. 1980); *Falcon v. Scottsdale Ins. Co.*, No. CV-06-122-FVS, 2006 WL 2434227, *2 (E.D. Wash. Aug. 21, 2006)).  Although defendants contend that Gannon is not a "necessary party" as that term is used in Rule 19 (Opposition at 5-7), the relevant inquiry is whether Gannon was directly involved in the events underlying Self's claims and whether failure to join him would lead to separate and redundant actions.  Gannon is not only *not* "tangentially related" to the events underlying Self's claims; he is allegedly *the* Equinox employee who made purportedly defamatory statements to SoulCycle and in this way precipitated the action.  Gannon is thus directly and centrally involved in the claims asserted in the action.  Additionally, the interests of justice would be served by permitting joinder because to do otherwise would lead to parallel, duplicative actions.

Although it does not appear that Self would be prejudiced if joinder were denied, because the statute of limitations on his defamation claim against Gannon has not yet run, the remaining factors weigh in favor of permitting joinder under § 1447(e).  As the court has discussed at length, *supra*, Self was reasonably diligent in attempting to ascertain Gannon's identity and involvement and attempted to add Gannon in a timely fashion; the third factor thus weighs in favor of joinder.  Self has also offered a plausible explanation for his desire to add Gannon, i.e., to proceed against all defendants in a single action.  Although defendants assert that Self's motive is to defeat diversity jurisdiction, the court "declines to impute an improper motive to [Self] simply because [he] seeks to add a non-diverse defendant post-removal."  *Falcon*, 2006 WL 2434227 at *3 (citing *IBC Aviation Servs.*, 125 F.Supp.2d at 1012); see also *Perryman*, 2009 WL 5185177 at *4.  The court thus concludes that the fourth factor weighs in favor of permitting joinder.

As for the remaining two factors – the validity of Self's claims against Gannon and the possibility that Self would be prejudiced if joinder were denied – these, too, appear to weigh in favor of permitting joinder.  As noted, Self alleges that Gannon was directly involved in the conduct giving rise to his claims – indeed, he was the Equinox employee who purportedly made false and defamatory statements about Self to SoulCycle.  Defendants contend that Self's claim against Gannon lacks merit because: (1) the alleged statements are "plainly opinion statements that cannot form the basis for a claim for defamation" under California law; and (2) all of the statements are privileged because the information "bear[s] on the growth and success of both

businesses" and is thus "typically privileged from liability for defamation." (Opposition at 6-7.) At this stage in the litigation, and based on the record before it, the court cannot agree.

Regarding defendants' first contention, the court notes that defendants offer nothing more than their own conclusory assertion to show that the allegedly defamatory statements are "plainly opinion statements" that are not actionable. More fundamentally, even accepting defendants' premise that some of Gannon's purportedly defamatory statements were opinions, i.e., that Self "bad mouthed" Equinox and left on "bad terms," that does not compel the conclusion that Gannon made no potentially actionable statement. In California, "defamation requires a publication [of fact] that is false, defamatory, unprivileged, and has a tendency to injure or cause special damage." *Davis v. Tower Select Ins. Co., Inc.*, No. CIV S-12-1593 KJM-CKD, 2013 WL 127724, *4 (E.D. Cal. Jan. 9, 2013) (citing *Hawran v. Hixon*, 209 Cal.App.4th 256, 277 (2012)). Self's claim against Gannon in state court alleges far more than that Gannon stated that Self "bad mouthed" Equinox and left on "bad terms." Gannon allegedly stated, *inter alia*, that Self made false statements to Gannon and Equinox and actively solicited clients and spin instructors to leave Equinox while employed there, when Self purportedly did neither. (See Hong Decl., Exh. J, ¶¶ 66-76.) In contrast to the two statements referenced by defendants in their opposition, each of these allegedly defamatory statements are factual statements, the truth or falsity of which – i.e., whether Self actually made false statements and whether Self actually approached clients and instructors and solicited them – can potentially be proved at trial. Self's claim against Gannon thus appears to be based, at least in part, on factual statements to SoulCycle that would be sufficient to support a defamation claim under California law.

As respects defendants' second contention, that Self's claim against Gannon lacks merit because any statements were privileged, the court is not persuaded. As noted, defendants contend that the communications on which Self bases his claim against Gannon are "typically privileged from liability for defamation." (Opposition at 7.) Under California law, "a defamatory statement is subject to a conditional privilege if made '[i]n a communication, without malice, to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such relation to the person interested as to afford a reasonable ground for supposing the motive for the communication to be innocent, or who is requested by the person interested to give the information." *Lee v. Eden Medical Center*, 690 F.Supp.2d 1011, 1022 (N.D. Cal. 2010) (citing CAL. CIV. CODE § 47(c)). Although the privilege typically applies to job references given in response to a request by another employer, see *id.* at 1022 (citing *Neal v. Gatlin*, 35 Cal.App.3d 871, 874 (1973)), "[t]he conditional privilege is defeated by a showing of malice." *Id.* at 1023 (citing *Sanborn v. Chronicle Publishing Co.*, 18 Cal.3d 406, 413 (1976)). "Actual malice" must be shown, i.e., "that the publication was motivated by hatred or ill will towards the plaintiff [o]r by a showing that the defendant lacked reasonable grounds for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights." *Sanborn*, 18 Cal.3d at 406 (citing *Roemer v. Retail Credit Co.*, 44 Cal.App.3d 926, 936 (1975)).

Self alleges that, in making the statements, Gannon "knew the[ ] statements were false," (Hong Decl., Exh. J, ¶ 72), suggesting that he "lacked reasonable grounds for belief in the truth of the publication." If Self can make such a showing, he will defeat any privilege that would otherwise exist. Thus, although it need not definitively decide whether joinder would be

1   More fundamentally, even if the court were to accept defendants' premise that Self lacked

2   good cause to amend the scheduling order so that he could add Gannon, and that he seeks

3   dismissal of this action as an "end-run around th[e] court's authority to decide whether to grant

4   him leave to amend," this would not constitute plain legal prejudice.  As noted, the loss of a

5   federal forum, and the attendant loss of federal procedural protections – such as Rule 16's good

6   cause standard – that may give plaintiff a tactical advantage do not constitute legal prejudice.  See

7   *Smith*, 263 F.3d at 976 ("Plain legal prejudice does not result merely because the defendant will

8   be inconvenienced by having to defend in another forum or where a plaintiff would gain a tactical

9

10  appropriate, the court observes that Self's claim against Gannon may have merit.  See *IBC
    Aviation Services*, 125 F.Supp.2d at 1012-13 (noting that the court is to consider "whether the

11  claim sought to be added *seems* meritorious," citing *Clinco v. Roberts*, 41 F.Supp. 2d 1080, 1083

12  (C.D. Cal. 1999); *Goodman v. Travelers Ins. Co.*, 561 F.Supp. 1111, 1113-14 (N.D. Cal. 1983)
    (emphasis added)).  Accordingly, this factor weighs in favor of permitting joinder. See *Perryman*,

13  2009 WL 5185177 at *4 ("Next, the Court must determine the 'apparent merit of the claims

14  against' Mr. Hanley.  Here, the Court finds, and Defendants does not argue otherwise, that
    Plaintiff may have valid claims against Mr. Hanley.  Indeed, these claims on their face indicate

15  that Mr. Hanley may be directly involved in the alleged negligence asserted against Life Time.
    Thus, this factor weighs in favor of permitting joinder of the non- diverse Defendant"); *Oum v.

16  Rite Aid Corp.*, No. CV 08-7741-GHK (VBKx), 2009 WL 151510, *2-3 (C.D. Cal. Jan. 20,

17  2009) (finding that this factor weighed in favor of permitting joinder where, "on its face, the
    [plaintiff's] slander claim seems valid")

18  Finally, denying joinder would require that Self institute a parallel action and proceed to

19  litigate in two separate forums claims arising from the same underlying facts and circumstances;
    such a result would be prejudicial to Self.  See *Perryman*, 2009 WL 5185177 at *4 ("[P]reventing

20  Plaintiff from joining Mr. Hanley would require Plaintiff to choose between pursuing parallel
    action in state court involving redundant litigation arising out of the same facts and legal issues,

21  or foregoing her potential claims against Mr. Hanley.  Requiring Plaintiff to litigate the same
    issues in two forums would also be a waste of judicial resources and risks inconsistent results.

22  Thus, since Plaintiff would likely be prejudiced, this factor also weighs in favor of permitting

23  joinder"); *Falcon*, 2006 WL 2434227 at *4 ("Preventing Plaintiff from joining non-diverse
    Defendants Andre-Romberg and Cochrane & Company in this action would require Plaintiff to

24  choose between pursuing a parallel action in state court involving redundant litigation arising out

25  of the same facts and legal issues, or foregoing his potential claims against Andre-Romberg and
    Cochrane & Company.  Further, requiring Plaintiff to litigate essentially the same issues in two

26  forums would be a waste of judicial resources and risks inconsistent results").

    Based on the forgoing, the court concludes that the § 1447(e) factors, on balance, would
27  have weighed in favor of permitting Gannon's joinder had Self filed a motion for leave to amend

28  rather than a motion for voluntary dismissal under Rule 41.

advantage by that dismissal," citing *Hamilton*, 679 F.2d at 145).   Additionally, "[i]t is also clear that granting a voluntary dismissal in order to avoid a non-dispositive adverse ruling does not amount to plain legal prejudice."   *Golden Valley Dairy, L.L.C. v. Northwest Dairy Ass'n*, No. 10-cv-00069-EJL, 2010 WL 2620003, *2 (D. Idaho June 24, 2010) (citing *Manshack v. Sw. Elec. Power Co.*, 915 F.2d 172, 174 (5th Cir. 1990) (drawing a distinction between procedural rulings and rulings on the merits for purposes of voluntary dismissal motions)); see also *King*, 2013 WL 5675007 at *2 ("O'Reilly also argues, however, that in addition to losing its federal forum, it will lose the benefit of the court's ruling with respect to Mr. King's perpetuation deposition if the court grants Mr. King's motion.   Plain legal prejudice, however, does not necessarily result from granting a voluntary dismissal that will allow a plaintiff to avoid a non-dispositive adverse ruling" (citations omitted)); *Mitchell-Jones*, 2011 WL 3273221 at *2 ("Menzies asserts it will suffer 'plain legal prejudice' because the voluntary dismissal of Mr. Mitchell-Jones's complaint may result in the revival of his claims for retaliation in state court.   This court previously denied Mr. Mitchell-Jones's motion to amend his complaint to include retaliation claims.   The court's denial, however, was not based on the merits of Mr. Mitchell-Jones's claims, but rather on his attempt to add the claims so late in the litigation and his failure to justify the amendment under the 'good cause' standard of Federal Rule of Civil Procedure 16.   The fact that Mr. Mitchell-Jones may gain some tactical advantage vis-a-vis his retaliation claims by voluntarily dismissing this action and re-filing in state court does not constitute the type of 'legal prejudice' that warrants the denial of a motion for voluntary dismissal.   Legal prejudice is not established simply because the plaintiff gains a tactical advantage in the litigation through voluntary dismissal.   The court's decision might be different if its ruling on the retaliation claims had been on the merits or if Menzies faced the loss of a substantive defense, such as the statute of limitations, but that is not the case here.   Menzies does not face 'legal prejudice' simply because it faces the prospect of having to defend against the merits of Mr. Mitchell-Jones's retaliation claims in state court").

### c.       Expenses Incurred by Defendants During the Litigation

Defendants next contend they will suffer legal prejudice because they "will be forced to start from scratch with this litigation after carrying on in this court for five months."[92]   The court finds this argument unavailing.   "The Ninth Circuit has plainly rejected this type of inconvenience and expense as a basis for finding plain legal prejudice in the context of a Rule 41(a)(2) motion." *Mitchell-Jones*, 2011 WL 3273221 at *4 ("Menzies complains that it has incurred substantial expense in the defense of this federal action, that its management personnel have already been deposed, and that it would be prejudicial to force them to submit to another round of depositions. The Ninth Circuit has plainly rejected this type of inconvenience and expense as the basis for finding plain legal prejudice in the context of a Rule 41(a)(2) motion"); see, e.g., *In re Lowenschuss*, 67 F.3d 1394, 1400-01 (9th Cir. 1995) ("[T]he inconvenience of defending another lawsuit or the fact that the defendant had already begun trial preparations does not constitute prejudice"); *Hyde & Drath v. Baker*, 24 F.3d 1162, 1169 (9th Cir. 1994) (same); *Hamilton*, 679 F.2d at 146 ("Appellant's contention that appellee should have been estopped from requesting a voluntary dismissal, because appellant was put to significant expense in preparing and filing its pleadings, is without merit"); *Maculan v. City of Escondido*, No. 13cv1794 L (WVG), 2014 WL 3341070, *2 (S.D. Cal. July 8, 2014) ("Neither 'the expense incurred in defending against a lawsuit' nor the '[u]ncertainty [that] a dispute remains unresolved' amounts to 'legal prejudice'" (citations omitted)); *King*, 2013 WL 5675007 at *2 ("The Ninth Circuit has specified that neither the fact that a defendant has incurred substantial expense, nor the fact that a defendant has begun trial preparations establishes legal prejudice warranting the denial of a motion under Rule 41(a)(2)," citing *Hamilton*, 679 F.2d at 145-46).

Although the court may condition dismissal on Self's payment of defendants' attorneys' fees and costs– a subject it considers *infra* – the mere fact that defendants have incurred expenses during the pendency of this litigation does not constitute legal prejudice and is not sufficient

---

[92]Opposition at 2.

1  grounds to deny Self's motion for voluntary dismissal, particularly given that the case is still in

2  its early stages.

3  ### d.   Self's Delay in Seeking Dismissal

4  "Undue delay on a plaintiff's part may be one factor that weighs in favor of the denial of

5  a motion to dismiss." *Viriyapanthu*, 2013 WL 3188848 at *2 (citing *Westlands*, 100 F.3d at 97).

6  Although defendants appear to argue they will be prejudiced if the court dismisses the action

7  because Self was dilatory in seeking to amend or dismiss after identifying Gannon as the individual

8  who made allegedly defamatory comments to SoulCycle,[93] the court cannot agree.  As noted, Self

9  has diligently attempted to ascertain the identity of the individual who made the purportedly

10  defamatory statements since this action began.  Immediately following the scheduling conference,

11  he served requests for production and deposition notices, and advised defendants that each form

12  of discovery was focused on identifying the Equinox employee who made the allegedly defamatory

13  statements.[94]  Despite Self's attempts to obtain documents and depose defendants' witnesses prior

14  to the deadline for the amendment of pleadings, documents were not produced until September

15  8, 2014, and the deposition of SoulCycle's Rule 30(b)(6) witness did not occur until September

16  30, 2014.[95]

17  Nor was Self dilatory in filing a motion for voluntary dismissal.  On October 8, 2014 – one

18  month after identifying Gannon as the individual who made allegedly defamatory statements

19  through defendants' document production and within weeks of deposing SoulCycle's person most

20  knowledgeable – Self asked defendants to stipulate to the filing of an amended complaint adding

21  Gannon.[96]  Self also sought a stipulation on October 13 and 15, 2014.[97]  Defendants refused to

---

[93]Opposition at 2-4.

[94]Hong Decl., ¶¶ 4-6.

[95]See DeLaney Decl., ¶ 7; Hong Decl., ¶¶ 9-10.

[96]Hong Decl., ¶ 11.

[97]*Id.*, ¶¶ 12-14.

1   stipulate on each occasion.  Only after defendants refused to stipulate did Self file the state court

2   action naming Gannon as a defendant.[98]  After filing the state court complaint, Self asked

3   defendants to stipulate to the dismissal of this action on October 28, 2014.[99]  When they refused,

4   he filed this motion.

5          Under the circumstances, the court believes that any delay in bringing this motion was

6   attributable to Self's repeated attempts to resolve the matter informally through stipulation, rather

7   than resorting immediately to motion practice.  The case had been pending a mere five months at

8   the time that Self filed the motion, and the court has yet to rule on any dispositive, much less

9   substantive, motions.  Given Self's explanation of the timing of the motion and the early stage of

10  the proceedings, the court concludes that defendants will not suffer legal prejudice as a result of

11  Self's "delay" in filing a dismissal motion.  See, e.g., *Viriyapanthu*, 2013 WL 3188848 at *2

12  ("Undue delay on a plaintiff's part may be one factor that weighs in favor of the denial of a

13  motion to dismiss. . . .  [T]he Court finds that Plaintiffs were not dilatory in pursuing this motion.

14  Within weeks of the removal of this action to federal court, Plaintiffs sought remand to state court

15  in order to consolidate all claims in one action.  That motion was ultimately unsuccessful, and

16  Plaintiffs subsequently filed the present motion for dismissal before any dispositive motion had

17  been filed on either side, and before any motion to dismiss had been filed by any defendant.

18  Indeed, to date no motion has been filed by any defendant on any substantive issue.  Whereas the

19  parties in *Westlands* had already completed a preliminary injunction hearing 'at which extensive

20  evidence and legal briefing was submitted' and the case was 'ripe for judicial determination,' here

21  no such proceeding has yet taken place and the case is not anywhere near as procedurally

22  advanced"); *McCovey*, 2006 WL 2329465 at *2 (concluding that defendants would suffer no legal

23  prejudice from voluntary dismissal of an action in part because "the case is barely underway," and

24  "besides the instant motions, there has been almost no action by the parties beyond the filing of

25  the Complaint and Answer").

26  ────────────────

27  [98]*Id.*, ¶ 15.

28  [99]*Id.*, ¶ 16.

30

1

### e.       Conclusion Regarding Dismissal

2

For the reasons articulated, the court concludes that dismissal of the action is warranted.

3    Defendants have failed to demonstrate that dismissal will cause them to suffer plain legal

4    prejudice.[100]

5

### 2.       Whether the Dismissal Should be With or Without Prejudice

6

In determining whether a dismissal should be with or without prejudice, courts consider

7    (1) the defendant's effort and expense in preparing for trial; (2) excessive delay and lack of

8    diligence on the part of the plaintiff in prosecuting the action; and (3) insufficient explanation of

9    the need to dismiss. *Fraley*, 2012 WL 893152 at *3; *Burnette v. Godshall*, 828 F.Supp. 1439,

10   1443-44 (N.D. Cal. 1993).  The court "may order the dismissal to be with prejudice where it

11   would be inequitable or prejudicial to defendant to allow plaintiff to refill the action." *Burnette*,

12   828 F.Supp. at 1443.

13

14

15

16   _____

17   [100]In addition to concluding that defendants will not suffer the types of legal prejudice they
     identify in their opposition, the court concludes that they have adduced no evidence that they

18   would suffer any other type of legal prejudice.  As the Ninth Circuit in *Westlands* observed, a
     party may suffer legal prejudice if dismissal would deprive the defendant of "the right to a jury

19   trial" or a "statute-of-limitations defense." *Westlands*, 100 F.3d at 97.  Neither factor is relevant

20   here.  Self has demanded a jury trial in the state court action (see Hong Decl., Exh. J), and
     defendants thus will not face the prejudice of being denied a jury trial.  Similarly, defendants do

21   not appear to have a statute of limitations defense to Self's claims (see Opposition at 6 ("[A]t the
     time Self unilaterally filed his second action in state court, the one-year statute of limitations on

22   defamation claims had not yet expired with respect to some of the claims Self asserts"), and thus

23   will not suffer prejudice by losing a defense.  Accordingly, the court declines to find prejudice on
     either of these bases.

24
     Nor is there any suggestion that Self's state court lawsuit is "frivolous" or that it was

25   instituted in "bad faith" to prevent defendants from securing a resolution of Self's claims against
     them.  See *Manuel v. Shipyard Holdings*, No. C 01-00883 WHA, 2001 WL 1382050, *3 (N.D.

26   Cal. Nov. 5, 2001) ("Ninth Circuit caselaw intimates that a district court may refuse to grant

27   dismissal under Rule 41(a)(2) when exceptional circumstances suggest bad faith and/or vexatious
     tactics on the part of the plaintiff, and that the defendant may suffer the 'legal prejudice' of never

28   having claims resolved," citing *In re Exxon Valdez*, 102 F.3d 429, 432 (9th Cir. 1996)).

Although Self's motion does not state whether he seeks dismissal with or without prejudice, his reply clarifies that he requests dismissal without prejudice.[101]  Defendants, for their part, do not contend that dismissal without prejudice is inappropriate.  Given the reason for the dismissal request, and the circumstances that led up to it, the court believes that dismissal of Self's claims without prejudice is proper.

Although defendants assert that they "were required to perform a significant amount of work" in the federal forum and that discovery is "well under way,"[102] the action has, from the court's perspective, not moved much beyond the pleadings stage.  No substantive or dispositive motions have been filed and, other than making initial disclosures, it appears that the only discovery that has been conducted is the deposition Self took of SoulCycle's person most knowledgeable and the request for production of documents he served on defendants.[103]  Thus, far from being at an advanced stage, little, if any, substantive work has taken place.  This factor weighs in favor of dismissing Self's action without prejudice.

As for the remaining factors – undue delay/lack of diligence and an insufficient explanation of the need to dismiss – these, too, weigh in favor of dismissal without prejudice.  As the court has explained, Self's explanation for seeking dismissal, i.e., that he wishes to proceed against defendants and Gannon in the same action, is reasonable and sufficient, especially given his repeated attempts to secure a stipulation from defendants allowing him to add Gannon as a defendant in this action.  Furthermore, defendants have failed to demonstrate that they will suffer any legal prejudice if the court dismisses the action without prejudice.

"[T]aking into account the lack of any legal prejudice to . . . [defendants], the relatively early stage of the proceedings, the fact that [d]efendant[s] ha[ve] not invested substantial resources into this litigation, and . . . [Self's] reasons for dismissing h[is] case ([to proceed against all defendants in one action]), the [c]ourt exercises its discretion to dismiss the case without

---

[101]Reply at 10.

[102]Opposition at 7-8.

[103]See Reply at 7.

prejudice." *Williams*, 227 F.R.D. at 540 ("Here, taking into account the lack of any legal prejudice to the District, the relatively early stage of the proceedings, the fact that Defendant has not invested substantial resources into this litigation, and Ms. Williams' reasons for dismissing her case (inability to find counsel, health), the Court exercises its discretion to dismiss the case without prejudice"); see *Fraley*, 2012 WL 893152 at *3 ("Defendant's investment of resources in this litigation thus far will not be rendered futile by dismissal of Fraley's and Wang's claims without prejudice, nor will the dismissal without prejudice subject Defendant to the risk of additional litigation.  Taking into account these considerations, along with the lack of any legal prejudice to Defendant and the relatively early stage of the proceedings, the Court does not find it would be inequitable or prejudicial to Defendant to allow Fraley and Wang to become absent class members should the putative Class be certified.  Accordingly, Fraley's and Wang's claims are dismissed without prejudice); *DCI Solutions Inc. v. Urban Outfitters, Inc.*, No. 10cv0369-IEG (BGS), 2011 WL 6013090, *2 (S.D. Cal. Dec. 1, 2011) ("DCI argues that the Court should exercise its discretion and dismiss the remaining counterclaims with prejudice.  In support of this argument, DCI fails to point to any prejudice it would suffer by a dismissal without prejudice other than the prospect of facing a future lawsuit.  The Ninth Circuit has stated that 'the prospect of a subsequent suit on the same facts' is insufficient to establish 'legal prejudice.'  DCI also argues that the Court should dismiss these counterclaims with prejudice because Urban has failed to explain why the counterclaims should be dismissed without prejudice.  Urban has provided a sufficient explanation of its reason for seeking dismissal without prejudice. . . .  Accordingly, because DCI has not shown that it will suffer clear legal prejudice, and Urban has provided an explanation for its request, the Court DISMISSES WITHOUT PREJUDICE Urban's remaining equitable counterclaims" (citations omitted)); *Lepesh v. Barr*, No. Civ. 00-0057-AS, 2001 WL 34041885, *4 (D. Or. Apr. 2, 2001) (dismissing a suit without prejudice despite the fact that "Defendant and defense counsel ha[d] expended a considerable amount of time and resources in defending against Plaintiffs' suit," and the plaintiff "plan[ned] to re-file the action in a state court" because defendants failed to demonstrate that either circumstance constituted plain legal prejudice).  Compare *Burnette*, 828 F.Supp. at 1444 (observing that the fact that "the trial has not yet started

and no pretrial motions were pending at the time the dismissal motion was filed" weighed in favor of dismissing without prejudice, but dismissing the claim with prejudice after concluding that defendants had expended "significant expense in responding to [a] frivolous civil RICO claim").

### 3.   Whether the Court Should Impose Terms and Conditions on the Dismissal

Defendants argue that Self should be required to pay their attorneys' fees and costs as a condition of dismissal under Rule 41(a)(2).[104]  Self counters that attorneys' fees are inappropriate because California law does not provide for a fee award on the claims he asserts.[105]  In the event the court concludes that attorneys' fees are warranted, however, Self contends that defendants should recover only fees for services related to preparing work product that cannot be used in the pending state action.[106]

The terms and conditions of dismissal under Rule 41(a)(2) are within the discretion of the district court.  See *Hargis v. Foster*, 312 F.3d 404, 412 (9th Cir. 2002) ("We review a district court's determination of the terms and conditions of dismissal under Rule 41(a)(2) for an abuse of discretion").  Although not a prerequisite to voluntary dismissal, courts frequently order a plaintiff seeking dismissal without prejudice[107] to pay defendants' costs, expenses, and attorneys'

---

[104]Opposition at 7-8.

[105]Reply at 9.

[106]*Id.* at 8-9.

[107]Where a plaintiff seeks dismissal *with prejudice*, courts have held that attorneys' fees should not be awarded as a condition of dismissal.  See *AeroTech, Inc. v. Estes*, 110 F.3d 1523, 1528 (10th Cir. 1997) ("[W]e continue to adhere to the rule that a defendant may not recover attorneys' fees when a plaintiff dismisses an action with prejudice absent exceptional circumstances"); *Colombrito v. Kelly*, 764 F.2d 122, 133-34 (2d. Cir. 1985) ("[W]hen a lawsuit is voluntarily dismissed with prejudice under Fed.R.Civ.P. 41(a)(2), attorneys' fees have almost never been awarded"); *Cauley v. Wilson*, 754 F.2d 769, 771 (7th Cir. 1985) ("Fees are not awarded [under Rule 41(a)(2)] when a plaintiff obtains a dismissal with prejudice because the 'defendant cannot be made to defend again,'" quoting *Smoot v. Fox*, 353 F.2d 830, 833 (6th Cir. 1965)); *Dee-K Enterprises, Inc. v. Heveafil Sdn. Bhd.*, 177 F.R.D. 351, 356 (E.D. Va. Jan. 22, 1998) ("In light of this dismissal with prejudice, an award of attorney's fees is inappropriate").

fees.  See *LeCompte v. Mr. Chip, Inc.*, 528 F.2d 601, 603 (5th Cir. 1976); cf. *Stevedoring Services of America*, 889 F.2d at 921 ("Although costs and attorney fees are often imposed upon a plaintiff who is granted a voluntary dismissal under [Rule] 41(a)(2), no circuit court has held that payment of the defendant's costs and attorney fees is a prerequisite to an order granting voluntary dismissal").[108]  "The purpose of such awards is generally to reimburse the defendant for the litigation costs incurred, in view of the risk (often the certainty) faced by the defendant that the same suit will be refiled and will impose duplicative expenses upon him." *Colombrito*, 764 F.2d at 133.  Generally, fees should be awarded only for work that will not be of benefit in any future litigation.  See *Westlands*, 100 F.3d at 97 ("[D]efendants should only be awarded attorney fees for work which cannot be used in any future litigation of the[ ] claims"); *Koch v. Hankins*, 8 F.3d 650, 652 (9th Cir. 1993) ("[D]efendant is entitled only to recover, as a condition of dismissal under Fed.R.Civ.P. 41(a)(2), attorneys fees or costs for work which is not useful in continuing litigation between the parties").

Self contends that attorneys' fees are inappropriate because "none of [his] causes of action [would support an award of] attorneys['] fees" under California law.[109]  To the extent Self asserts that the court can condition dismissal on the payment of attorneys' fees only if the underlying causes of action would support such an award, the court disagrees.  Although Self's claims would

---

[108]This is because the defendant "has been freed of the risk of relitigation of the issues just as if the case had been adjudicated in his favor after trial, in which event (absent statutory authorization) the American Rule would preclude such an award." *Colombrito*, 764 F.2d at 134.

[108]Defendants argues, in their opposition, that they are "entitled" to an award of "attorneys' fees and costs incurred in the litigation of this action before this Court." (Opposition at 7-8.)  As Self correctly notes in his reply (see Reply at 7), defendants are mistaken.  Attorneys' fees and costs may be awarded as a condition of the voluntary dismissal of an action without prejudice; as the Ninth Circuit recognized in *Stevedoring Services of America*, 889 F.2d at 921, however, an award of fees and/or costs is *not mandatory*, but rather lies within the district court's sound discretion.

[109]Reply at 9.

1  not support an award of attorneys' fees under California law,[110] "[a] district court has discretion

2  to condition the plaintiff['s . . . voluntary dismissal without prejudice upon the payment of costs

3  and attorneys fees." *Estate of Vyborny v. Thurston County*, No. C09-5197 RBL, 2010 WL

4  1253197, *1 (W.D. Wash. Mar. 23, 2010).   Such an award falls within the court's "inherent

5  authority under Rule 41(a)(2) to condition dismissal on any terms it considers proper." *Play

6  Visions, Inc. v. Dollar Tree Stores, Inc.*, No. C09-1769 MJP, 2011 WL 2292326, *6 (W.D.

7  Wash. June 8, 2011) (citing *Smith*, 263 F.3d at 976).   The includes an order requiring the

8  payment of fees. See *Westlands*, 100 F.3d at 97; *Stevedoring Services of America*, 889 F.2d at

9  921.

10      Because the court has determined that it is appropriate to dismiss this action without

11  prejudice, and because Self has asserted the same claims in a different action, the court concludes

12  that dismissal should be conditioned on an award to defendants of the attorneys' fees they have

13  incurred for work performed that will be of no benefit to them in the ongoing state court litigation.

14  See, e.g., *Maculan*, 2014 WL 3341070 at *3 ("The Court finds and concludes that conditioning

15  plaintiff's motion for voluntary dismissal is appropriate in this action.   A court granting a motion

16  for voluntary dismissal with conditions must give the plaintiff 'a reasonable period of time within

17  which [either] to refuse the conditional voluntary dismissal by withdrawing [the] motion for

18  dismissal or to accept the dismissal despite the imposition of conditions.' *Beard v. Sheet Metal

19  Workers Union*, 908 F.2d 474, 476 (9th Cir. 1990).   Based on the foregoing, IT IS ORDERED

20  granting plaintiff's motion for voluntary dismissal without prejudice subject to the condition that

21  should plaintiff seeks to amend his state court complaint to name defendant City of Escondido, or

22  refill an action against defendant under the same or substantially similar facts or law, plaintiff shall

23  bear defendant's costs from this suit for discovery, motion practice, or any other items, which

24  defendant is able to demonstrate cannot be used in the second or future litigation"); *Mitchell-

25  Jones*, 2011 WL 3273221 at *4 ("If Mr. Mitchell-Jones refiles his complaint, or a substantially

26  similar one, Menzies may be forced to repeat discovery or motion practice already conducted

27  

28      [110]*Id.*

36

here. Accordingly, although the court will grant Mr. Mitchell-Jones's motion for voluntary dismissal under Rule 41(a)(2), it will do so only upon the conditions stated below which are designed to protect Menzies' interest"); *Estate of Vyborny*, 2010 WL 1253197 at *1 (requiring, as a condition of granting plaintiff's motion for voluntary dismissal without prejudice, that plaintiff pay defendants' fees and costs).

Before imposing such a condition, the court must determine which portion of the fees defendants have incurred reflect work that cannot be used in future litigation of Self's claims. See *Westlands*, 100 F.3d at 97; *Koch*, 8 F.3d at 652. This is because it is not proper to award defendants all "attorneys' fees and costs incurred in the litigation of this action before this Court."[111] as they assert. Because defendants have not provided a breakdown of the attorneys' fees charged and costs incurred, the court cannot determine exactly what portion of the claimed work could not be used in the state court litigation.

The court observes, however, that fees attributable to preparation of the joint Rule 26(f) report and attendance at the scheduling conference, the drafting and serving of initial disclosures, and the drafting and filing of opposition to this motion are most likely recoverable because it is likely that such work will be of no use in the parties' future state court litigation. See, e.g., *Estate of Yvborny*, 2010 WL 1253197 at *1 ("The Court finds that the $4,265.58 incurred while scheduling and holding the FRCP 26(f) conference, drafting and filing the joint status report, drafting and serving initial disclosures, and negotiating with Plaintiffs' counsel regarding the proposed dismissal is recoverable because that work will be unnecessary or repeated in future litigation"). Additionally, in the event defendants are unable to remove the state court action to federal court, fees attributable to the drafting and filing of defendants' notice of removal would also likely be recoverable. Cf. *id*. ("If, however, Plaintiffs re-file and do not assert a claim giving rise to federal-question jurisdiction, the $1,332.50 Airlift Northwest incurred in removing the case to federal court is recoverable because it is unnecessary for future litigation"). Remaining fees

---

[111]Opposition at 7.

1   – specifically those associated with discovery or the filing of pleadings in this action – would

2   likely not be recoverable because it appears that that work can be used in the state court action.

3

4                                   **III.  CONCLUSION**

5          For the reasons stated, the court is prepared to dismiss the action without prejudice subject

6   to Self's payment of certain fees and costs.  Because the court's approval of Self's request for

7   dismissal is conditional, Self must be given the opportunity to consider whether he wishes to

8   accede to the conditions or whether he wishes to withdraw his dismissal request.  See *Lau v.*

9   *Glendora Unified Sch. Dist.*, 792 F.2d 929, 930 (9th Cir. 1986).  In order to afford him adequate

10  opportunity to consider that question, Self will have to know the amount of fees that he will be

11  required to pay as a condition of dismissal.  The court therefore directs defendants to submit a

12  pleading, on or before **January 9, 2015**, that details the fees and costs they have incurred that will

13  not be of use in the state court action.  Once the court issues an order detailing what portion of

14  those fees and costs it will award as a condition of dismissal, Self will have **four business days**

15  to file Notice of Withdrawal of Request for Dismissal indicating that he wishes to withdraw his

16  request for dismissal.  If he does not do so, the court will dismiss the action without prejudice

17  subject to the payment of the fees and costs the court determines reflect work not usable in the

18  pending state court case.

19

20  DATED: January 5, 2015

21                                   *Margaret M. Morrow*
                                     _____
                                     MARGARET M. MORROW
                                     UNITED STATES DISTRICT JUDGE

22

23

24

25

26

27

28

38